**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTY VALENTINE, | |
| Plaintiff, | 2:14-cv-0999-RCJ-NJK |
| vs. | **ORDER** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *et al.*, | |
| Defendant. | |

This case arises from Defendant State Farm's alleged refusal to pay a claim submitted by Plaintiff Christy Valentine, one of its insureds. Before the Court is State Farm's Motion for Summary Judgment (ECF No. 21). Plaintiff filed a Response (ECF No. 24) and State Farm filed a Reply (ECF No. 27). For the reasons contained herein, the Motion is GRANTED.

**I.   FACTS AND PROCEDURAL HISTORY**

At all times relevant to this action, Plaintiff owned an automobile insurance policy purchased from State Farm ("the Policy"). The Policy included Uninsured/Underinsured Motorist ("UM/UIM") coverage. On July 23, 2012, Plaintiff was involved in an automobile accident in Las Vegas, Nevada when a third-party struck the rear end of her vehicle ("the Accident"). (Compl. ¶ 6, ECF No. 1). The Accident caused only minor damages to Plaintiff's vehicle and in her initial report to State Farm she stated that no injuries were suffered. (Claim Record, ECF No. 21, Ex. C, at 168). The other vehicle was a rental car that had been loaned by

the renter to the third-party driver, who was uninsured. (*Id.*). The party who rented the vehicle was insured by Allstate.

On July 25, 2012, Plaintiff contacted State Farm and stated that she had begun feeling back pain allegedly due to the Accident. (*Id.*). On August 2, 2012, State Farm Claims Representative Debbie Bridgeman ("Bridgeman") sent a letter to Plaintiff acknowledging her claim under the UM/UIM coverage portion of the Policy and requested that Plaintiff sign a "Medical Authorization for Release of Information" so that State Farm could investigate Plaintiff's medical claims. (Hooker Decl. ¶ 7, ECF No. 23). Bridgeman also included a "Medical Provider List and Injury Questionnaire" so that Plaintiff could list her current and past medical providers. (*Id.*).

On August 6, 2012, State Farm received a letter from Plaintiff's counsel notifying it that Plaintiff was represented in the potential UM/UIM claim and directing State Farm to send any future correspondence to counsel. (*Id.* ¶ 8). Thereafter, on September 24, 2012, Bridgman sent a letter to Plaintiff's counsel requesting verification of the Allstate liability limits and the available limits through the rental company. (*Id.* ¶ 9). When Bridgeman received no response, she sent another letter to Plaintiff's counsel on December 11, 2012 inquiring whether Plaintiff would be making a UM/UIM claim and against requesting verification of the liability limits for Allstate. (*Id.* ¶ 10). Again, no response was forthcoming. On May 13, 2013, Bridgeman sent yet another letter to Plaintiff's counsel inquiring whether Plaintiff would be submitting a UM/UMI claim based on the Accident and requesting that Plaintiff provide all medical records and bills associated with the injury sustained during the Accident, along with the information Bridgeman previously requested. (*Id.* ¶ 11).

Finally, on May 20, 2013, Plaintiff's counsel sent a formal demand letter to State Farm with an attachment indicating Allstate's rejection of liability and listing Plaintiff's medical expenses in relation to the injury she allegedly sustained on July 23, 2010. The expenses listed totaled $21,850. (Demand Letter, ECF No. 21-2, Ex. I). The letter also included notes from Plaintiff's doctor visit following the accident. The examination was characterized as a "follow-up" visit and the doctor noted that Plaintiff's lower back was "feeling better" with injections "until [she] was struck" in a motor vehicle accident. (Medical Notes, ECF No. 21-2, Ex. J). The doctor also "renewed" a number of medical prescriptions for Plaintiff. (*Id.*). The other piece of medical history provided by Plaintiff's counsel showed that Plaintiff suffered from degenerative disc disease and lumbosacral. (*Id.*).

Based on this information, Bridgeman determined that Plaintiff obviously suffered from a pre-existing condition that affected her lower back. (Injury Evaluation, ECF No. 21-2, Ex. K). Accordingly, before State Farm could make any payments under the UM/UIM coverage, it needed to determine what medical costs were attributable to the Plaintiff's alleged injury from the Accident and which expenses arose from Plaintiff's pre-existing condition.

On June 1, 2013, Bridgeman completed a partial evaluation of Plaintiff's UM/UMI claim but sent Plaintiff's counsel a letter requiring the additional information necessary to finalize the evaluation. Bridgeman stated that it appeared "that Ms. [Valentine] [had] chronic back problems and was treating just prior to this loss." (June 1, 2013 Letter, ECF No. 21-2, Ex. L). Bridgeman then requested Plaintiff's five-year medical history and an opinion of apportionment pertaining to Plaintiff's lumbar and cervical areas from Plaintiff's treating physician, Dr. Jeremy Lipshutz. (*Id.*). Bridgeman noted that, alternatively, Plaintiff could sign an enclosed medical authorization form and State Farm would obtain the requested information from her doctors. (*Id.*).

When State Farm heard nothing from Plaintiff or her counsel, Bridgeman sent a letter on July 8, 2013 to reiterate the need for the information requested in the June 1st letter and stating that State Farm could not complete the UM/UIM evaluation without it. (July 8, 2013 Letter, ECF No. 21-2, Ex. M). On July 19, 2013, Plaintiff's counsel provided denial letters from the adverse insurance companies, including Allstate, and counsel indicated that Plaintiff's prior medical records had been requested. (July 19, 2013 Response, ECF No. 21-2, ECF No. N). On August 6, 2013, Bridgeman wrote to Plaintiff's counsel, thanking him for the denial letters and again requesting that Plaintiff's medical history and that Dr. Lipshutz's apportionment opinion be sent to State Farm so the UM/UIM claim evaluation could be completed. (Aug. 6, 2013 Letter, ECF No. 21-2, Ex. O).

On October 2, 2013, Bridgeman once again sent a letter to Plaintiff's counsel with enclosed copies of the June 1st letter, the July 8th letter, and the August 6th letter, requesting that Plaintiff's five-year medical history be provided. (Oct. 2, 2013 Letter, ECF No. 21-2, Ex. O). Alternatively, Bridgeman asked that Plaintiff sign a medical authorization form and identify a list of medical providers so that State Farm could pursue the information on its own. (*Id.*). In response, Plaintiff's counsel sent State Farm prior medical records from Plaintiff's primary care provider, Dr. Jennifer Leepard. (Hooker Decl. ¶ 20). The records revealed that Plaintiff had sought treatment for serious lumbar spine conditions during the five years prior to the Accident. (*Id.*; Medical Records, ECF No. 21-2, Ex. Q).

With this additional information, Bridgeman attempted to complete her evaluation of Plaintiff's UM/UMI claim, but she still needed to know how the various medical bills should be apportioned between Plaintiff's pre-existing condition and the injuries allegedly suffered in the Accident. Since Plaintiff still had not provided an apportionment opinion, State Farm contacted

1   Dr. Joseph Schifini and requested that he provide an objective opinion regarding the

2   apportionment of Plaintiff's injuries and treatment expenses. (Nov. 19, 2013 Letter, ECF No.

3   21-2, Ex. T).  Dr. Schifini conducted an evaluation based on the medical records provided;

4   however, he requested a number of missing records from "Dr. Lipshutz, Dr. Jason Garber, and

5   Dr. Harb" as well as lumbar MRIs that were performed on Plaintiff during the five years

6   preceding the Accident but that were not included in the information sent to State Farm.

7   Bridgeman then made this same request to Plaintiff's counsel on January 15, 2014 and indicated

8   that State Farm would secure the information if Plaintiff was inclined to sign the medical

9   authorization form.  (Jan. 15, 2014 Letter, ECF No. 21-3, Ex. U).  Bridgeman also invited

10  Plaintiff's treating physician to respond to Dr. Schifini's report if Plaintiff so wished. (*Id.*).

11       On February 11, 2014, Bridgeman sent yet another letter to Plaintiff's counsel to follow

12  up the January 15th letter and again request the missing medical information and lumbar MRIs

13  so that apportionment could be determined and evaluation of Plaintiff's UM/UIM claim

14  completed. (Feb. 11, 2014 Letter, ECF No. 21-3, Ex. V).  The next day, Plaintiff's counsel

15  returned the signed authorization form for the release of Plaintiff's medical information, though a

16  list of medical providers was not included. (Feb. 12, 2014 Letter, ECF No. 21-3, Ex. W).

17  Plaintiff's counsel also advised that he would contact State Farm in thirty days for a status update

18  on the UM/UIM claim evaluation.

19       However, on February 26, 2014, less than two weeks after sending the medical

20  authorization form, Plaintiff filed the present lawsuit against State Farm in state court claiming

21  breach of contract, bad faith, and unjust enrichment. (Compl. ¶¶ 20, 25, 29).  State Farm

22  removed the action to this Court. (Pet. for Removal, ECF No. 1).  After engaging in discovery,

23  State Farm filed the present Motion for Summary Judgment on Plaintiff's claims.

24

5

## II.   LEGAL STANDARD

A principal purpose of the summary judgment rule is to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A court grants summary judgment only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court "must draw all reasonable inferences supported by the evidence in favor of the non-moving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Rather, only genuine issues of *material* facts are relevant to the summary judgment analysis. A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The burden is met by demonstrating to the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. This is done by citing to depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A). Once the initial burden is met, however, "Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial." *Fairbank*, 212 F.3d at 531.

Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "In such

a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.  Conversely, where reasonable minds could differ on the facts proffered in support of a claim, summary judgment should not be granted.  *Petzak v. Nevada ex rel. Dep't of Corr.*, 579 F. Supp. 2d 1330, 1333 (D. Nev. 2008).  "Summary judgment is inappropriate if reasonable jurors . . . could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

**III.   DISCUSSION**

State Farm argues that summary judgment is appropriate in this case because Plaintiff violated the terms of the Policy by failing to provide complete medical records or medical authorization so that State Farm could fully investigate Plaintiff's pre-existing medical condition in order to determine what portion of her injuries were caused by the Accident.  State Farm also argues that Plaintiff violated the terms of the Policy by filing suit before complying with the Policy's conditions.  State Farm maintains that these violations release it from any obligation pertaining to Plaintiff's UM/UIM claim.  The Court agrees.

The UM/UIM portion of the Policy states in relevant part:

INSURED'S DUTIES

. . .

3. Insured's Duty to Cooperate With Us

a. The insured must cooperate with us and, when asked, assist us in:
. . .

(2) securing and giving evidence;
. . .

6. Other Duties . . . Uninsured Motor Vehicle Coverage . . . .

A person making a claim under:

   a. . . . Uninsured Motor Vehicle Coverage . . . must:

   (1) notify us of the claim and give us all the details about the death, injury, treatment, and other information that we may need as soon as reasonably possible after the injured insured is first examined or treated for the injury.
   . . .

   (3) provide written authorization for us to obtain:

   (a) medical bills;

   (b) medical records; [and]
   . . .

   (d) any other information we deem necessary to substantiate the claim.
   If the holder of the information refuses to provide it to us despite the authorization, then at our request, the person making claim or his or her legal representative must obtain the information and promptly provide it to us.

(Insurance Policy, ECF No. 22, at SF000034–35).

   The Policy also prohibits the insured from bringing legal action against State Farm if the insured fails to comply with the terms of the Policy:

   GENERAL TERMS

   13. Legal Action Against Us

   Legal action may not be brought against, nor may arbitration be demanded of, us until there has been full compliance with all the provisions of this policy.  In addition, legal action may only be brought against, or arbitration demanded of, us regarding:
   . . .

   (c) Uninsured Motor Vehicle Coverage if the insured or that insured's legal representative:

   (1) presents either an Uninsured Motor Vehicle Coverage claim to us; and

   (2) files a lawsuit or demands nonbinding arbitration in accordance with the Deciding Fault and Amount provision of the involved coverage.

   Except as provided in c.(2) above, no other legal action may be brought against, nor any arbitration be demanded of, us relation to Uninsured Motor Vehicle

>Coverage for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled Consent to Settlement and Deciding Fault and Amount.

(*Id.* at SF000038).

Under Nevada law, "[a]n insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003). "If an insurance policy is unambiguous, [the court] interpret[s] it according to the plain meaning of its terms." *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014). While the language of the policy is viewed from the perspective of one not trained in the law or insurance, "[u]nambiguous provisions will not be rewritten." *Neal*, 64 P.3d at 473. And "[w]hen an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 962 (Nev. 2011).

In this case, the undisputed facts make it clear that Plaintiff failed to fulfill her side of the bargain. State Farm initially requested Plaintiff's medical information pursuant to the Policy on August 2, 2012 so that the coverage amount could be determined. Nine months later, and after three more letters from Bridgeman, in May 2013 Plaintiff's counsel finally provided a formal demand for coverage under the Policy and certain medical records and bills. But the medical records were limited to doctor visits that occurred after the Accident and they indicated that Plaintiff suffers from chronic lower back problems. Understandably, then, State Farm sought additional information to determine what injury, if any, was caused by the Accident and therefore covered under the Policy.

Bridgeman first made a request for additional medical information on June 1, 2013. Plaintiff did not answer. Bridgeman made another request on July 8, 2013. And while

1  Plaintiff's counsel provided the denial letters from the adverse insurance companies, no medical

2  history was sent. Thus, Bridgeman made a third request on August 6, 2013. Plaintiff did not

3  answer. On October 2, 2013, Bridgeman made a fourth request for Plaintiff's medical history

4  and an opinion from Dr. Lipshutz regarding the apportionment of Plaintiff's injuries. At last,

5  Plaintiff responded by providing the medical records of her primary physician for the five years

6  preceding the Accident, approximately fourteen months after State Farm's initial request.

7        Although these medical records made it clear to State Farm that Plaintiff's lower back

8  condition pre-dated the Accident and was regularly treated before the Accident, the records

9  failed to give State Farm any idea of what portion of Plaintiff's injury and submitted medical

10  bills should be attributed to the Accident. This is particularly true since Plaintiff ignored State

11  Farm's request for Dr. Lipshutz's opinion on the matter.

12        To ascertain some certainty as to what amount of Plaintiff's medical bills should be

13  reimbursed, Bridgeman passed Plaintiff's medical records to Dr. Schifini, who also could not

14  determine the degree of injury Plaintiff suffered from the Accident without additional medical

15  records. At that point, State Farm for a fifth time requested Plaintiff's full medical records or

16  alternatively that Plaintiff sign the authorization form so that Bridgeman could pursue the

17  necessary information. Plaintiff did not answer.

18        A sixth letter was sent to Plaintiff's counsel requesting the various medical records and

19  lumbar MRI to which Plaintiff finally responded with a signed authorization form, though she

20  omitted the names of medical providers from whom the information could be obtained. Shortly

21  thereafter, Plaintiff sued State Farm.

22        These facts clearly show a lack of cooperation on Plaintiff's part. It is axiomatic that an

23  insurer must only provide payment on claims to which the insured is legally entitled. *Pemberton*

24

1  *v. Farmers Ins. Exch.*, 858 P.2d 380, 384 (Nev. 1993).  In cases where the plaintiff has a

2  pre-existing condition and then suffers injury to that same area, it is the plaintiff's initial burden

3  to prove that the accident was a cause of the plaintiff's claimed injury. *Kleitz v. Raskin*, 738 P.2d

4  508, 510 (Nev. 1987).  If the insured is unwilling to assist the insurer in determining whether

5  particular injuries resulted from an accident covered by the insured's policy rather than a

6  pre-existing condition, then certainly the insured has failed to cooperate. *See Holland v. State*

7  *Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-01058-LDG-GWF, 2014 WL 1268712, at *5 (D. Nev.

8  Mar. 27, 2014) (George, J.) (denying coverage where insured refused to provide complete

9  information despite repeated requests by the insurer).

10       Plaintiff cannot expect State Farm to pay her medical bills without proving that at least

11  some of the cost stems from the Accident, especially when her lumbar issues are so well

12  documented and she was receiving extensive treatment prior to July 23, 2012.  In fact, Plaintiff

13  acknowledges that she had the responsibility to "assist State Farm with its investigation and

14  provide all information necessary for them to determine the value of her claim before she [could]

15  file suit." (Pl.'s Opp'n 8, ECF No. 24).  Plaintiff argues, however, that she fulfilled this

16  requirement when she provided various medical records on May 20, 2013.  As State Farm

17  conveyed to Plaintiff's counsel multiple times, the records provided were unresponsive as to

18  apportionment, and the evaluation could not be completed without some evidence on that matter.

19  Furthermore, Plaintiff never explained to State Farm why Dr. Lipshutz or another of Plaintiff's

20  treating physicians could not provide an apportionment opinion.

21       The Court also notes that State Farm never actually denied Plaintiff's claim.  Bridgeman

22  worked to complete the evaluation of the claim with the limited information available to her.

23  Once State Farm determined that the evaluation could not be finalized without an apportionment

24

opinion it sought Dr. Schifini's assistance. However, when Dr. Schifini could not determine proper apportionment, Bridgeman again requested that Plaintiff provide the additional medical records. In what appears to be nothing more than a sham effort to comply with the terms of the Policy, Plaintiff signed the medical authorization form on February 12, 2014 only to sue State Farm a week and a half later.[1] Indeed, Plaintiff's lawsuit prevented State Farm from concluding its investigation and determining whether to grant or deny coverage.

It is absurd to think that an insured who fails to provide her insurer with medical information critical to a full and fair investigation of the insured's claim should then be able to sue the insurer for refusing to pay on that same claim. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 2:07-cv-00060-KJD-LRL, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009) (Dawson, J.) (finding that the insured's "unjustified refusal" to submit to an independent medical exam precluded her from recovering under the insurance policy). By ignoring State Farm's numerous requests for the information that would allow an apportionment of the injuries and treatments, Plaintiff did not cooperate with State Farm and prevented a complete investigation of her claim. The duty to cooperate is an unambiguous requirement under the terms of Plaintiff's Policy, and she breached it. Plaintiff is therefore precluded from maintaining suit against State Farm since cooperation is a condition of her coverage and therefore a prerequisite to legal action. *Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 714 P.2d 562, 562–63 (Nev. 1986) (holding that where a policy specifies that a particular condition of coverage must be met before the insurance company is liable, such provisions are generally enforced).

The Court grants State Farm's Motion.

---

[1] Plaintiff argues that the Policy did not require her to provide both medical records and a signed medical authorization form. (Pl.'s Opp'n 9, ECF No. 24). This argument is unpersuasive and unavailing. It is apparent from the facts that State Farm was not requiring both. State Farm primarily requested that Plaintiff provide her complete medical records for the five years prior to the Accident. When Plaintiff failed to comply, Bridgeman suggested that, alternatively, Plaintiff could sign an authorization form so that State Farm could pursue the records on its own and complete its investigation.

**CONCLUSION**

IT IS HEREBY ORDERED that State Farm's Motion for Summary Judgment (ECF No. 21) is GRANTED.

IT IS SO ORDERED.

Dated: April 27, 2015.

_____
ROBERT C. JONES
United States District Judge